**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JENNY HUTCHINS**                                                                   **PLAINTIFF**

**v.**                              **NO. 3:22-cv-00165-PSH**

**KILOLO KIJAKAZI, Acting Commissioner**                              **DEFENDANT**
**of the Social Security Administration**

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jenny Hutchins ("Hutchins") challenges the denial of her applications for disability insurance benefits and supplemental security income payments. Hutchins maintains that her residual functional capacity was erroneously assessed because the Administrative Law Judge ("ALJ") disregarded the medical opinions and prior administrative medical findings in this case and failed to consider the statements of two lay witnesses. Because substantial evidence on the record as a whole supports the ALJ's decision, and he committed no legal error, his decision is affirmed.[1]

---

[1]      The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." <u>See</u> <u>Sloan v. Saul</u>, 933 F.3d 946, 949 (8th Cir. 2019).

The record reflects that Hutchins was forty-four years old on June 23, 2021, the day of the administrative hearing. She alleged during the hearing that she became disabled on June 1, 2018, as a result of various mental and physical impairments.

Hutchins has a history of mental impairments that includes post-traumatic stress disorder and a depressive disorder with anxiety. She has sought professional help for her impairments, primarily seeing or speaking via telecommunication device with Robin Stein, LCSW, ("Stein") between what appears to have been March of 2020 and March of 2021. See Transcript at 765-877. Hutchins reported, inter alia, a history of abuse and neglect; a history of trauma, caused in part by the death of her father and grandfather; and a history of anxiety caused by health concerns. She also reported having difficulties sleeping. Although Hutchins typically had a flat affect and a depressed mood, her mental status examinations were generally unremarkable. See, e.g., Transcript at 769-770, 777, 795-796, 814-815, 830-831, 853, 870-871. Stein consistently diagnosed, in part, a major depressive disorder, "[r]ecurrent episode, [m]oderate [w]ith mild anxious distress," see e.g., Transcript at 863, but no functional limitations were assessed, see, e.g., Transcript at 831. Hutchins was treated with Lexapro, which helped treat her symptoms.

On February 2, 2021, Stein signed a Mental Medical Assessment Questionnaire. <u>See</u> Transcript at 712-716. Stein represented in the Assessment that Hutchins' mental impairments significantly impact her ability to work in a competitive work environment. With respect to Hutchins' mental abilities and the aptitudes needed to perform even unskilled work, Stein represented that Hutchins is unable to meet competitive standards or otherwise has no useful ability to function in areas that include the following: understanding and remembering very short and simple instructions, maintaining regular attendance and being punctual, performing at a consistent pace, and dealing with normal work stress. Stein observed that Hutchins has been depressed and anxious since she was an adolescent, although her symptoms have improved with medication. Stein opined that Hutchins' psychiatric condition exacerbates her pain and other symptoms, and Hutchins would be absent from work more than four days a month as a result of her impairments or treatment for her impairments.

On April 12, 2021, Stein signed a second Mental Medical Assessment Questionnaire. <u>See</u> Transcript at 905-909. Stein' findings and observations in the second Assessment are substantially similar to the findings and observations she made in her first Assessment.

Hutchins has a history of physical impairments that include coronary artery disease, cervical spine arthritis, left shoulder arthroscopy, seizures, and headaches. For instance, in July of 2018, she presented to an emergency room having "a non-ST elevation myocardial infarction." See Transcript at 700. An angiogram was performed, and a stent was placed in an artery. She was prescribed Brilinta. She did well following the surgery, and testing was normal. See Transcript at 690-709. She was expected to "resume normal activities without any restrictions" after a recovery period. See Transcript at 702. She was having trouble, though, controlling her hypertension, and she was encouraged to stop smoking cigarettes.

Hutchins was seen by Audrey Crowl ("Crowl"), an Advanced Practice Registered Nurse, between what appears to have been October of 2019 and March of 2020 for various complaints, the primary complaint being one of chronic neck, shoulder, and back pain. See Transcript at 600-655. The progress notes reflect that although Hutchins had pain with movement in her shoulder and some tenderness in her lumbar spine, she otherwise had full range of motion in her extremities, a normal gait, and negative straight leg raises. Testing of her shoulder and cervical spine was negative. She was encouraged to stop smoking cigarettes and gradually increase her aerobic activity.

Beginning in what appears to have been February of 2020, Hutchins was seen for chronic musculoskeletal pain, seizures, and headaches by Dr. Clara Applegate, M.D. ("Applegate"). See Transcript at 580-586. Hutchins' history of seizures was noted, as was her use of Keppra to treat her seizures. She reported that Keppra caused unpleasant side effects. A physical examination was unremarkable and included normal findings with respect to, inter alia, her back, extremity muscle strength, and gait. She was started on Zonegran, and an EEG was ordered. The EEG was subsequently performed, and the results were within normal limits.

Hutchins was seen by Applegate again in June and August of 2020. See Transcript at 677-688. Hutchins complained of severe pain in her left shoulder with a limited range of motion. She reported that she had not had a seizure in some time, and Zonegran was helping her headaches. Physical examinations were largely unremarkable, although she had a "palpable 'click' with elevation of the left shoulder and tenderness at the left subacromial bursa." See Transcript at 685. She was given a Depo-Medrol/bupivacaine injection in her left shoulder.

X-rays of Hutchins' left shoulder were taken in November of 2020, and the results were negative. See Transcript at 734-740. She had a normal alignment, and no soft tissue swelling was noted.

Hutchins saw Applegate again in February of 2021. <u>See</u> Transcript at 912-918. Hutchins reported having had no recent seizures and was doing "a lot better on Zonegran with fewer headaches and less depression although she still [had] mood swings." <u>See</u> Transcript at 912. She reported upcoming shoulder surgery and was observed to be "leaning forward all of the time." <u>See</u> Transcript at 912. The results of a physical examination were largely unremarkable. Applegate assessed generalized epilepsy and continued to prescribe Zonegran.

Hutchins continued to experience shoulder pain, and an arthrogram of her left shoulder was taken in February of 2021. <u>See</u> Transcript at 720-726. The results were normal and showed no evidence of a labral tear or "other internal derangement." <u>See</u> Transcript at 721.

Hutchins continued to experience shoulder pain, complaining of "aggressive popping and snapping" in her left shoulder. <u>See</u> Transcript at 884. Because conservative pain management had failed to produce effective results, and subsequent testing had revealed "an unstable bicep anchor, as well as a large anterior labral tear," she elected to undergo shoulder surgery. <u>See</u> Transcript at 884. The post-operative progress notes reflect that her condition improved, although her recovery was hindered by her continued use of tobacco products. <u>See</u> Transcript at 965-968.

On August 30, 2021, Crowl signed a Physical Medical Assessment Questionnaire. <u>See</u> Transcript at 971-974. Crowl represented in the Assessment that Hutchins' physical impairments significantly impact her ability to work in a competitive work environment. Crowl opined, in part, that Hutchins can sit for about thirty minutes at one time, can stand for about fifteen minutes at one time, and must have a job that allows her to shift positions at will and take unscheduled breaks. Crowl opined that Hutchins can occasionally lift a maximum of ten pounds; can occasionally twist, stoop, and crouch; but can never climb stairs. Crowl additionally opined that Hutchins experiences constant pain and has only fifty percent use of her left arm.

Hutchins' medical records were reviewed by state agency medical consultants Kristin Jarrard, M.D., ("Jarrard") and Denise Greenwood, M.D., ("Greenwood") as a part of the administrative process. <u>See</u> Transcript at 93-94, 120-121. They opined that Hutchins has no severe impairments and is capable of performing medium work.

The record contains a summary of Hutchins' work history. <u>See</u> Transcript at 274-301. The summary reflects that she worked consistently between 2005 and 2009, worked sporadically between 2010 and 2017, and did not work at all after 2017.

Hutchins testified during the administrative hearing. See Transcript at 38-75. She has a high school education and has previously worked as a machine operator and general laborer. She is unable to work, in part, because she cannot use her left arm, primarily because of her left shoulder impairment. Although no work-related restriction have ever been imposed, one physician told her to "[j]ust kind of be careful." See Transcript at 55. Hutchins has difficulty walking because of the pain and swelling in her ankles. She suffers from seizures, which recently have been of a "petty mal" nature, see Transcript at 67; kidney problems; acid reflux; hypertension; high cholesterol; and arthritis in her neck and back. She experiences headaches, or what were characterized as migraine headaches, about four times a month, headaches that are usually thirty to sixty minutes in duration. She rated the pain caused by her back pain and headaches as an eight on a ten point pain scale. Additionally, she reported severe depression and anxiety. Hutchins can do minimal household chores, such as putting clothes in a laundry basket and dishes in a sink. She can prepare simple meals and is able to shop for groceries. A typical day consists of such things as watching television, reading, and working crossword puzzles. The side effects of her medication include weight gain, and Brilinta caused her to bruise easily.

As a part of Hutchins' applications, she submitted statements signed by her husband and son. See Transcript 451-452. In the statements, her husband and son recounted the many activities she could previously perform, e.g., participating in sports and cleaning the house without help, and noted that her mood was previously upbeat. Her husband and son reported that now, she cannot perform those activities without assistance and suffers from depression.

The ALJ found at step two of the sequential evaluation process that Hutchins has severe impairments in the form of "a history of coronary artery disease ..., cervical spine arthritis, a post-traumatic stress disorder ..., a history of left shoulder arthroscopy, history of seizures, a history of migraine headaches, and a depressive disorder with anxiety." See Transcript at 13. The ALJ assessed Hutchins' residual functional capacity and found that Hutchins is capable of light work with the following additional limitations:

> ... the claimant is unable to operate motor vehicles or firearms, to climb ropes/ladders/scaffolding, or to reach overhead with her left upper extremity. She is limited to doing simple, routine, and repetitive tasks, with supervision that is simple, direct, and concrete. The claimant is occasionally able to interact with co-workers, supervisors, and the public.

See Transcript at 15. In making the assessment, the ALJ found Stein, Crowl, Jarrard, and Greenwood's opinions unpersuasive because their opinions are not supported by their own treatment notes and are otherwise inconsistent with the record. The ALJ made no mention of the statements signed by Hutchins' husband and son. The ALJ found at step four that Hutchins cannot perform the requirements of her past relevant work but found at step five that there is other work she can perform. Given those findings, the ALJ concluded that Hutchins is not disabled within the meaning of the Social Security Act.

Hutchins maintains that her residual functional capacity was erroneously assessed. It is Hutchins' contention that the ALJ committed error when he found Stein, Crowl, Jarrard, and Greenwood's opinions unpersuasive. Hutchins additionally maintains that the ALJ committed error when he failed to consider the statements signed by Hutchins' husband and son.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The ALJ must consider all of the relevant evidence in making the assessment. See Grindley v. Kijakazi, 9 F.4th 622 (8th Cir. 2021).

20 C.F.R. 404.1520c(a) provides that the ALJ will not defer or give any specific weight to a medical opinion or prior administrative medical finding. See <u>Phillips v. Saul</u>, No. 1:19-cv-00034-BD, 2020 WL 3451519 (E.D. Ark. June 24, 2020).[2] The ALJ will instead determine the persuasiveness of a medical opinion or prior administrative medical finding based on the following criteria:

> [...] supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

See <u>Id</u>. at 2.[3]

---

[2]      A "prior administrative medical finding" is a finding about a medical issue made by an agency medical and psychological consultant at a prior level of review in the claimant's current claim based on the consultant's review of the evidence in the case. <u>See</u> 20 C.F.R. 404.1513(a)(5).

[3]      In <u>Morton v. Saul</u>, No. 2:19-cv-92-RLW, 2021 WL 307552, 7 (E.D. Mo. Jan. 29, 2021), the district court observed that as to the "supportability" factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." As to the "consistency" factor, the court observed that "an opinion is more persuasive if it is more consistent with the overall evidence as whole." <u>See</u> <u>Id</u>.

With respect to the claimant's subjective complaints, the ALJ is obligated to consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluate the intensity, persistence, and limiting effects of the pain or other symptoms. In evaluating the intensity, persistence, and limiting effects of the claimant's pain or other symptoms, the ALJ must consider all the evidence in the record, including evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p.

Having reviewed the record, the Court finds that the ALJ did not err in assessing Hutchins' residual functional capacity. The ALJ adequately evaluated all of the evidence relevant to Hutchins' mental and physical impairments, and the pain they cause, and accounted for her limitations

in making the assessment. The ALJ could and did find Stein, Crowl, Jarrard, and Greenwood's opinions unpersuasive, and the ALJ did not err when he failed to mention the statements signed by Hutchins' husband and son. The Court so finds for the reasons that follow.

First, it is undeniable that Hutchins has a history of abuse, neglect, and trauma, and she suffers from depression and anxiety. Stein opined in her Mental Medical Assessment Questionnaires that Hutchins has extreme mental limitations in a number of different areas, so extreme in fact that she is incapable of performing even unskilled work. The ALJ could and did find, though, that Stein's own treatment notes paint an appreciably different picture of Hutchins' mental limitations. Although Stein observed that Hutchins typically had a flat affect and a depressed mood, Hutchins' mental status examinations were otherwise unremarkable. As the ALJ could and did find, Hutchins regularly had "logical thought processes, cooperative behavior, good insight and judgment, intact memory functions, and average intelligence." See Transcript at 19. Hutchins showed no signs of mania, hypomania, suicidal/homicidal thoughts, self-abuse, or hallucinations, and Lexapro helped treat her symptoms. The ALJ could and did therefore find that Stein's opinions are unpersuasive because they are not supported by her own treatment notes.

Second, in February of 2020, Hutchins saw Applegate primarily for chronic musculoskeletal pain, seizures, and headaches. During the presentation, though, Applegate noted the following with respect to Hutchins' mental status: "Orientation was full to 10 to 10 questions of orientation. Speech was fluent without word hesitation. No difficulty following a complex command. The affect was euthymic." See Transcript at 583. Applegate made similar findings again in August of 2020, although she noted that Hutchins' affect was anxious and depressed. See Transcript at 685. Given such findings as were made by Applegate, the ALJ could find that Stein's opinions are unpersuasive because they are inconsistent with other evidence in the record.

Third, it is undeniable that Hutchins has limitations caused by physical impairments, the most significant impairment likely being the difficulties caused by her left shoulder problem. Crowl opined in her Physical Medical Assessment Questionnaire that Hutchins' physical impairments significantly impact her ability to work in a competitive work environment. For instance, Crowl opined, in part, that Hutchins can sit for about thirty minutes at one time, can stand for about fifteen minutes at one time, experiences constant pain, and has only fifty percent use of her left arm. The ALJ could and did find, though, that Crowl's treatment notes

do not buttress her opinions as her notes contain largely unremarkable findings. Crowl routinely found that Hutchins had full range of motion in her extremities, a normal gait, and negative straight leg raises. Testing of Hutchins' shoulder and cervical spine was negative, although a subsequent MRI revealed, in part, a labral tear. Her condition improved following surgery. Crowl encouraged Hutchins to stop smoking cigarettes and gradually increase her aerobic activity. Given such findings, the ALJ could and did find that Crowl's opinions are unpersuasive because they are not supported by her own treatment notes.

Fourth, Applegate saw Hutchins on at least four occasions between February of 2020 and February of 2021. Save a "palpable 'click' with elevation of the left shoulder and tenderness at the left subacromial bursa" in August of 2020, see Transcript at 685, Hutchins' physical examinations were largely unremarkable. As the ALJ could and did find, the examinations indicated that Hutchins possessed "full extremity strength, normal muscle bulk and tone, intact sensations, a normal tandem gait, a stable stance, normal thoracic kyphosis, normal lumbar lordosis, a normal gait, and no spinal deformities." See Transcript at 20. Given such findings, the ALJ could and did find that Crowl's opinions are unpersuasive because they are inconsistent with other evidence in the record.

Fifth, Jarrard and Greenwood, the state agency medical consultants, opined that Hutchins has no severe impairments and is capable of performing medium work. The ALJ found, though, that Hutchins does, in fact, have severe mental and physical limitations and is restricted to light work with additional limitations. The ALJ's findings are supported by substantial evidence on the record as a whole, and the reasons the ALJ gave for finding the prior administrative medical findings unpersuasive, i.e., they are not supported by the agency review and report and are not consistent with other evidence in the record, are good reasons.

Last, it is true that the ALJ made no mention of the statements signed by Hutchins' husband and son. The ALJ' failure to do so was not error. As the Acting Commissioner of the Social Security Administration correctly notes, the ALJ was not required to articulate how he considered the statements. See Docket Entry 15 at CM/ECF 8 (citing 20 C.F.R. 404.1520c(d), 20 C.F.R. 416.920c(d)). Moreover, Hutchins has failed to show how the statements undermine the ALJ's decision.

Hutchins faults the ALJ for failing to fully develop the record. Hutchins so maintains because the ALJ  failed to order consultative examinations but instead "made medical determinations himself, something the law does not permit." See Docket Entry 13 at CM/ECF 13.

16

The ALJ has a duty to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining if the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

Here, there is sufficient information for the ALJ to have made an informed decision, particularly with respect to the limitations caused by Hutchins' left shoulder impairment. The Court is not persuaded that consultative examinations were required and is also not persuaded that the ALJ drew upon his own inferences from the medical evidence.

The governing standard in this case allows for the possibility of drawing two inconsistent conclusions. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). The evidence relevant to the limitations caused by Hutchins' mental and physical impairments is inconsistent and is capable of more than one acceptable characterization. The ALJ crafted an assessment of Hutchins' residual functional capacity that limited her to light work with additional limitations, and Hutchins has not shown how the ALJ erred in doing so.

The Court therefore finds that there is substantial evidence on the record as a whole to support the ALJ's findings, and he did not commit legal error. Hutchins' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 8th day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE